TATLER, INC., A CORPORATION OF NEW JERSEY, PLAIN-
TIFF-APPELLEE, v. E. I. Du PONT De NEMOURS & COM-
PANY, A CORPORATION OF THE STATE OF DELA-
WARE, WITH AUTHORITY TO DO BUSINESS IN NEW
JERSEY, DEFENDANT-APPELLANT.

Submitted October 3, 1939—Decided April 1, 1940.

Before BROGAN, CHIEF-JUSTICE, and Justices DONGES and PORTER.

For the plaintiff-appellee, *Crawford Jamieson* (*Nathan N. Schildkraut,* of counsel).

For the defendant-appellant, *Katzenbach, Gildea & Rudner* (*Frank S. Katzenbach,* 3d, of counsel).

BROGAN, CHIEF-JUSTICE. The defendant appeals from a judgment awarded to the plaintiff in the District Court of

the city of Trenton. A jury was waived by the parties; the state of case for appeal purposes was settled by the learned trial judge.

It appears that the plaintiff operates a china decorating business and the defendant manufactures and sells to that trade certain products used for china decoration. The plaintiff purchased from the defendant a quantity of liquid bright gold, known as preparation No. 467, and used it for decorating purposes. Out of that purchase and use of the product this litigation arose. The defendant, over a period of years, had been selling to the plaintiff a liquid gold known in the trade as preparation No. 500. The defendant appellant knew that the plaintiff used this second type of liquid gold for decorating purposes by mixing or compounding it with a secret formula of its own, the ingredients or elements of which were unknown to the defendant.

It further appears that one of the defendant's salesmen informed the plaintiff company that the defendant had perfected a new liquid gold known as No. 467, which the defendant considered superior to the No. 500 type which the plaintiff had been using. A sample was sent to the plaintiff "to try it out." The defendant did not know that type No. 467 would not mix with the secret preparation that plaintiff used in conjunction with type No. 500. The plaintiff's witness testified that he tried the sample of preparation No. 467 sent by the defendant but *without* mixing it with plaintiff's secret formula and that it appeared to be a good product. Thereupon the plaintiff purchased the new type of liquid gold No. 467 and when used for decorating the china, after mixing it with its own secret preparation, to produce a burnished gold effect, it proved to be unsatisfactory and the decoration done with the product "crackled," to the plaintiff's damage.

The cause of the damage, as the court found, was that type No. 467 liquid gold did not mix with the secret formula of the plaintiff. The court also determined that the sale to the plaintiff was not a sale by sample but that there was "an implied warranty of quality and fitness for the purposes of the plaintiff and that the defendant had knowledge of these purposes and that there was a breach thereof by the defend-

ant," and entered judgment for the full amount of the damages. In this the court was in error as a matter of law. Whether there was an implied warranty of suitability for a particular use is a matter that calls for a consideration of the pertinent statute—*R. S.* 46:30-21 (section 15 of the Uniform Sales act)—"Subject to the provisions of this chapter and of any statute in that behalf, there is no implied warranty or condition as to quality of fitness for any particular purpose of goods supplied under contract to sell or a sale except as follows: (1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * * * (3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

Under the recited facts, the implied warranty, if there was one, emerges out of the provisions of the first sub-division of the statute. The seller knew, of course, the purpose for which the goods were required and supplied goods which were suited to the buyer's purposes. As a matter of fact, the plaintiff's witness testified that the type of liquid gold bought was satisfactory and this was his judgment when he examined it and stated that "it appeared to be a good liquid bright gold." This testimony makes it perfectly clear that by inspection and use of the sample the plaintiff did not rely "on the seller's skill or judgment."

The plaintiff's damage in the matter arose because of the fact that defendant's preparation No. 467, which was a "good liquid gold," did not mix with plaintiff's own formula which plaintiff introduced into the preparation. The defendant did not know the ingredients of the Tatler secret formula and, this being so, how can one be persuaded that the plaintiff relied upon the defendant's skill or knowledge as to the suitability of liquid gold No. 467 when mixed with ingredients which to defendant was a secret? Compare *Dunbar Bros.* v. *Consolidated Iron Steel Manufacturing Co., 23 Fed. Rep.*

(2d) 416; *Moore* v. *Ford Motor Co.*, 43 *Id.* 683. Here the defendant knew the use to which its preparation was to be put and there is no testimony that it was not suitable for such purpose—in fact the testimony is the other way. It was only a failure when used in conjunction with other elements that the plaintiff itself introduced and with which defendant was not chargeable.

The judgment should be reversed, with costs.